DETERMINED IN THE

# COURT of ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### AT NOVEMBER TERM, 1863.

---

### JOHN NICHOLS v. JOHN W. DISSLER.

The title of a *bona fide* purchaser for value under a judicial sale, the judgment and order for sale remaining in full force and unsatisfied of record, cannot be defeated by parol proof of a payment of the debt by the defendant in execution to the plaintiff before the sale.

---

In error.*

The action was instituted to recover possession of certain premises in the county of Passaic, formerly owned and possessed by the plaintiff.

On the trial, the defendant claimed title under a purchase at an auditor's sale, upon a judgment in attachment against the plaintiff.

Against this the plaintiff produced the record of a judgment in the Court of Common Pleas of the city of New York against him, the said plaintiff, in favor of Farrand S. Stranahan, the attaching creditor, and also a paper purporting to be a satisfaction piece of that judgment. He then offered to prove by parol that the judgment recovered in

---

* For case and opinion of the court below, see 5 *Dutcher* 293.

New York was for the same debt as that recovered in New Jersey, and that the costs on the judgment in this state were paid before satisfaction was entered upon the judgment in New York. This evidence was objected to and overruled by the court as incompetent, and the judge thereupon charged the jury that the evidence so offered was not competent, and that they should hold the judgment in the attachment to have been unpaid and unsatisfied at the time of the auditor's sale. To this charge of the court the plaintiff excepted, and the jury having rendered a verdict in conformity with the charge, and judgment having been given thereon, was afterwards removed into this court by writ of error.

The principal error assigned was that the ruling of the judge below was erroneous, and that the testimony offered to show payment of the debt should have been received.

The case was argued by *S. Tuttle* and *S. N. Carey*, for plaintiff, and *J. Hopper* and *A. Q. Zabriskie*, for defendant.

The opinion of a majority of the court was delivered by

GREEN, C. On the trial of the cause in the court below, the defendant showed title to the premises in question under a deed from auditors in attachment, bearing date on the first day of July, 1841, and through sundry mesne conveyances to himself. The auditors' deed was made under a judgment in attachment, entered in the Passaic Common Pleas on the sixth of February, 1838, in favor of Farrand S. Stranahan *v.* Nichols, the plaintiff in this suit. The order for the sale of the land attached was made at July term, 1838. The judgment remained unsatisfied of record, and the order for sale unrevoked and in full force at the time of the creditors' sale. To defeat the title thus established, the plaintiff offered in evidence the record of a judgment recovered in the Common Pleas of the city of New York, by Stranahan *v.* Nichols, on the twenty-fifth of April, 1840, and a paper purporting to be a satisfaction piece of that judgment. He then offered parol evidence to show that the judgment recovered in New

York was for the same debt with that recovered in New Jersey, and that the costs on the judgment in this state were paid before satisfaction was entered upon the judgment in New York. The evidence was overruled, and the judge instructed the jury that the evidence thus offered to show that the judgment in attachment was inoperative and void, was incompetent for that purpose, and that they must consider the judgment, at the time of the sale by the auditors, as an existing unsatisfied judgment. To this charge the counsel of the plaintiff excepted, on the ground that the evidence offered was lawful and sufficient to establish the fact that at and before the time of the auditor's sale the judgment under which they sold was satisfied, and from the time of such satisfaction the judgment and all proceedings under the same were wholly inoperative and void.

The question is thus distinctly presented, whether the title of a *bona fide* purchaser for value under a judicial sale, the judgment and order for sale remaining in full force and unsatisfied of record, can be defeated by parol proof of a payment of the debt by the defendant in execution to the plaintiff before the sale.

There is no intimation or suggestion of fraud in the procurement of the sale, either in the record before us or by counsel at the trial or upon the argument before this court.

At the common law, parol evidence, even as between the parties to the judgment, was inadmissible to prove satisfaction of a judgment. The remedy of a defendant against whom a judgment had been rendered, and who had any good matter of discharge since the judgment, was by a writ of *audita querela*, which was in the nature of a bill in equity to be relieved against the oppression of the plaintiff. And the cases where this mode of relief was applicable, as stated by Blackstone, is where the plaintiff hath given a general release, or where the defendant hath paid the debt to the plaintiff without procuring satisfaction to be entered on the record. 3 *Bla. Com.* 405.

The form of this writ is disused. The modern practice is

not to put the defendant to the expense and trouble of the writ of *audita querela*, but to grant relief upon summary motion. But the relief granted is the same. Satisfaction of the judgment will be entered upon motion, upon proof of the payment of the judgment.

So strict is the common law rule against destroying the effect of a record by parol, that in an action upon the record the defendant could not plead payment, because such payment was matter *in pais*, and not of record. As applied to parties and privies to the judgment, that rule has been altered by statute. But the common law rule is unquestioned, and remains in full force as to all others than parties or privies.

At common law, where a judgment has been rendered, the defendant may discharge the debt by paying the debt to the sheriff before the return day of the execution, and the return of the officer, which he is bound to make, will show the fact of payment and the discharge of the debt.

So upon a writ of *fieri facias*, if the sheriff levy upon property of the defendant sufficient to satisfy the debt, the levy is itself satisfaction of the debt, although the sheriff should misappropriate or waste the property, unless, indeed, it should be restored to the defendant. In such case the plaintiff must look to the sheriff for his satisfaction.

If the amount is neither levied upon the defendant's property nor paid to the sheriff, the defendant is at liberty to settle with the plaintiff, upon such terms as he sees fit. It may be done by payment, by accord and satisfaction, or the plaintiff may forgive the debt and release it. As between themselves such arrangement will be valid, but they cannot thus wipe out a record to the prejudice of other parties. In such case the parties, or either of them, may apply to the court and have satisfaction entered, and when that is done the record is discharged, and not before.

The statute of this state has made full and wise provision upon this subject for the protection of the defendant. *Nix. Dig.* 407.*

* *Rev., p. 523.*

At the common law the defendant, upon motion in court, may have satisfaction entered. The statute goes further. It authorizes the plaintiff or his attorney, as of his own motion, to enter satisfaction without the authority of the court. It prescribes the mode and form in which it shall be done, either personally or by power of attorney. It makes it the *duty* of the plaintiff, upon the request of the defendant, to enter satisfaction. The court will order it to be done at the defendant's request, and at the cost of the party who has received satisfaction. And if either party is dead, the statute extends the same remedy to the survivors or their representatives.

Thus carefully and jealously did the common law guard the sanctity of a record, and the rights of parties acquired under it, and thus carefully has our statute provided for the protection of all the just rights of the defendant.

But it is now claimed, and certainly for the first time successfully in this state, that the mere payment of the debt, or a release given by the plaintiff to the defendant, is *ipso facto* a satisfaction and discharge of the record, and an abrogation of the power of the court, although the judgment and the order for sale remain upon the record unsatisfied and in full force. And thus offer is made by the defendant in the execution to cancel the record, by the verbal proof of himself and his attorney of a settlement between the parties in New York, and the satisfaction of a judgment more than nineteen years after the transaction occurred, for the defeat of the title of a *bona fide* purchaser for valuable consideration without notice, upon the faith of that record more than nineteen years ago. In my judgment, the rules of law and the sound dictates of public policy alike forbid it.

There is no authority in this state to sustain the claim. Neither the case of *Simmons* v. *Vandegrift, Saxton* 136, nor of *Den* v. *Downam*, properly considered, affords any support. The case in *Simmons* v. *Vandegrift* was a bill in equity, by a purchaser under an execution, for relief against a title fraudulently obtained under cover of a former judgment.

The complainant (in the language of the Chancellor) put himself before the court upon the broad ground, that the judgments under which the sheriff sold were paid and satisfied; that this was known to the purchaser and sheriff, and that they effected the sale fraudulently to injure the complainant's title. And in reference to this state of facts, and to the claim made by the complainant, the language of the Chancellor must be interpreted. It is undoubtedly true that if a prior judgment is satisfied, it cannot be used by the defendant as a cloak for fraud, to defeat the claims of subsequent purchasers. And if a purchaser is a party to the fraud, and takes title with knowledge of it, he will not be relieved in equity.

In *Den* v. *Downam & Cambloss*, 1 *Green* 138, Judge Ford, in his charge to the jury, said : " To make payment an absolute discharge of an execution, it ought in regularity to be entered upon record, in satisfaction and discharge of the judgment. It then operates as a discharge to all the world. It may indeed affect all parties and privies to a payment without being entered on record, but not strangers and innocent third persons, who purchase at public sales and pay the money *bona fide.*" Upon a motion for new trial the verdict was sustained, although exception was taken to the charge. It was not indeed held that the charge in this particular was correct. The argument proceeded and the case was decided upon other grounds. The case cannot be regarded as a direct authority in support of the principle contended for. In both these cases the payments were made not to the plaintiff in execution, but to the sheriff himself, and in one of them the sheriff was charged as a party to the fraud.

They do not sustain the legal doctrine that a payment to the plaintiff is a satisfaction, which renders the judgment inoperative and void.

The doctrine is, that the judgment is technically satisfied by a payment to the plaintiff. The power of sale is extinguished, and the execution, it is said, is *functus officio*. That

places sheriffs, auditors in attachment, and all officers having the executions of writs in a remarkable dilemma. There was of record a judgment unsatisfied, and an order of the court that they should sell this land. If they refused to sell, they were punishable by fine and imprisonment; and if they made sale, their title is worthless.

If a sheriff having a *ca. sa.* against the defendant arrests him, and the defendant says, I have paid the debt; if he takes the defendant's word and discharges him, and it turns out that the debt is not paid, the sheriff is guilty of an escape, and is liable for the debt. If he refuses to discharge him and the debt is paid, he is guilty of false imprisonment.

Or if the sheriff under a *fi. fa.* and levy, is told that the debt is paid, he may be shown a receipt; the receipt may be a forgery. The sheriff is doubtless bound to give the defendant an opportunity to show payment and have satisfaction made. If he refuse to proceed, the court will amerce him in the whole amount of the debt and costs. If he does proceed, the defendant will sue him as a trespasser; and if he sells the real estate, the title will be worthless.

It is attempted to escape this dilemma by saying that the process may justify the officer, though it will pass no title to the land sold under it.

But how can an extinguished power justify any act done under color of its authority? Voidable or irregular process may be relied on by way of justification. And if the judgment, though satisfied, can be regarded as operative, so far as to justify the officer, why may it not be equally operative to support the title of a *bona fide* purchaser without notice?

The judgment should be affirmed.

KENNEDY, J., read a dissenting opinion.

This is an action of ejectment, brought by the plaintiff to recover from defendant his land in Paterson. The original title of plaintiff to the lands in question is admitted. It bears date October 1st, 1836, for twenty-eight lots of land, and

for the consideration of five thousand dollars.  Shortly after
he was in possession of the premises.  On the 29th of March,
1837, plaintiff gave a bond for five hundred dollars to Far-
rand S. Stranahan, of New York.  On the 29th of May,
1837, Stranahan (the day the bond become due) filed an
affidavit in the clerk's office of the county of Passaic, and
procured an attachment against John Nichols, the plaintiff in
this action, as a non-resident debtor, said Nichols also resi-
ding in the city of New York.  Which attachment was
prosecuted in the usual form of law, by the appointment of
auditors, &c., until February 6th, 1838, when final judg-
ment was entered in favor of Stranahan against Nichols for
$520.74 debt, and $53.85 cost, no other person having ap-
plied to be admitted as creditor.  On the 19th of July, 1838,
an order for the sale of the land so attached was made by
the court.  These proceedings were delayed, it appears, in
the hands of the auditors, until after other proceedings had
been instituted on the same bond, on which judgment was
entered in the attachment.  On the 25th of April, 1840,
Stranahan entered up a judgment on the records of the
Court of Common Pleas of the city and county of New York,
for the principal and interest on the bond referred to.  On
the 14th of October, 1840, Stranahan entered a satisfaction
piece in the records of the clerk's office of said court, under
the seal of said Court of Common Pleas of the city and
county of New York, signed by the judge and clerk of said
court, in which Stranahan acknowledged satisfaction for the
judgment and cost.  Also the evidence of Richard Mott, at-
torney of Stranahan in the judgment, was offered that a bill
of cost in the attachment case in Passaic had been received,
in the handwriting of the attorney of Stranahan in the at-
tachment case, and that Nichols had, before the satisfaction
of the New York judgment, paid said judgment in full; also
had paid the bill of cost in the attachment case in New Jer-
sey.  Here all indebtedness of Nichols to Stranahan ceased,
and all legal proceedings between them was properly at
an end.  Our statute made it the duty of the plaintiff,

Stranahan, to cancel his judgment at Passaic, which had been paid in full. In *Nix. Dig.* 407, it is enacted, "Whenever any party in whose favor a judgment is rendered in the Supreme Court, or any of the inferior courts of Common Pleas in this state, shall have received satisfaction of said judgment, it shall be and *is hereby made the duty* of said party, either by himself or his attorney, forthwith to enter an acknowledgment of satisfaction upon the record of said judgment." It appears that, shortly after these transactions, Nichols, the plaintiff in this suit, left the city of New York on business in the west, where he remained several years. After he had left for the west, the auditors were directed by Stranahan, through his attorney, to sell the land attached in Passaic, although the whole amount of the judgment and cost had been paid, which was done, and the lands struck off to A. S. Pennington, the attorney of Stranhan, for the consideration of eighty-eight dollars.

The deed from the auditors to Pennington bears date July 1st, 1841. On the 15th of October, 1844, A. S. Pennington and wife conveyed the same premises, by a quit-claim deed, to Cornelius S. Van Waggoner, for the consideration of $150. On the 13th of April, 1847, C. S. Van Waggoner and wife conveyed the same premises, by a quit-claim deed, to Thomas Forbes, for the consideration of $150. On the 13th of April, 1847, Thomas Forbes and wife conveyed four lots of the twenty-eight contained in the same premises to John W. Dissler, the defendant in this suit, for the consideration of $250, who has since been in possession of the premises. Nichols, on his return from the west, finding his property in possession of defendant, brought this suit for the possession of his property. It is admitted that his title to the lands in question is a valid title, nor is there any evidence that an adverse claim is made through any *laches* of Nichols. He had paid Stranahan the amount of his claim in good faith, also the costs of the attachment. If the judgment on the attachment was still open on the record, it was not his duty to cancel it. The law made it the duty of Stranahan. As

far as it appears, he owed no man a dollar. He had a perfect right to go west, and remain as long as he pleased. He was not a non-resident debtor, liable to have his land sold in his absence, on some new attachment. For all that appears, he had made arrangement for the payment of his taxes, as no claim for taxes has appeared. By what figment of law, then, can a man who owes no man anything be dispossessed of his property in his absence? This brings in review the defendant's case.

The plaintiff in the judgment in the attachment, Stranahan, and his attorney, must be considered in law as one person. The official act of the attorney is the act of the plaintiff. Now, it appears that after Nichols had left for the west, Stranahan, by himself or his attorney, which is the same thing, instead of cancelling his paid judgment, which it was his legal duty to do, directed the auditors to make sale of the whole attached premises, for the whole amount of the judgment and cost. The property which cost Nichols, according to the deed in evidence, $5000, was purchased by Stranahan's attorney, at a public sale regularly advertised, for $88!

Stranahan's attorney knew that he had given the plaintiff, Stranahan, a bill of the costs in the attachment, for the purpose of having the whole settled in New York, where plaintiff and defendant both resided. Stranahan was a man of abundant means, residing within an hour's ride of Paterson, and there living. It is difficult to believe that the attorney, knowing the business was to be settled in New York, and his bill of cost paid to Stranahan, would have ordered on a sale without consulting the plaintiff and demanding the cost of him. The natural inference is that the attorney did demand the cost of plaintiff, and that Stranahan denied the payment of the judgment, or at least the payment of the cost in Passaic, and directed the attorney to make sale.

The attorney, in my view, would have been derelict to his duty had he ordered on the sale, under the circumstances

with which he was cognizant, without consulting the plaintiff, almost at his elbow.

A. S. Pennington was the attorney and the purchaser. Although a public sale regularly advertised, no outsider was willing to purchase. The attorney bid $88, the amount of his costs, for a property worth perhaps thousands. He held the property for three years and then sold to C. S. Van Waggoner for $150, but as evidence that he had no confidence in his title as *bona fide*, he declined to give a warrantee deed. Mr. Van Waggoner held the property for three years more and conveyed to Thomas Forbes for $150, the same amount that he gave three years before. And why did not Mr. Van Waggoner give a warrantee deed? It is evident that he had no confidence in the title, and would not be held responsible for it. Here another suspicious circumstance appears in the case. On the same day (April 13th, 1847,) that Mr. Van Waggoner gave a quit-claim deed to Thomas Forbes for the *twenty-eight* lots, Mr. Forbes and wife gave a warrantee deed to John W. Dissler, the defendant, for *four* of the twenty-eight lots, for the consideration of $250. Whether the five persons who purchased the remaining twenty-four lots received their deeds on the same day, does not appear in the case, but it is probable they did. Here several questions present themselves. Was Mr. Forbes a responsible grantor in warrantee conveyances? and did he commence the same day to make sales for a largely advanced price and put the profit in his own pocket? or was he the mere agent of Mr. Van Waggoner to give warrantee deeds for sales which Van Waggoner had previously made for his own benefit? These questions naturally suggest themselves from the evidence in the case.

The defendant alleged on the trial that he was a *bona fide* purchaser, and that those from whom he purchased had all purchased in good faith. The plaintiff had a clear right to rebut the defendant's claim by the evidence he offered to show to the jury, that the sale was not made in good faith— that the purchaser at the auditor's sale was not a *bona fide*

purchaser, and if the jury thought the evidence sufficient, they had a right so to find. I think the judge erred in refusing the evidence of plaintiff in this view of the case.

But again: the plaintiff had a right to offer the evidence he did offer, to prove fraud in the proceedings and consummation of the defendant's title. This court has always held that a claim of title could be attacked by proof of fraud in a court of law, and even by parol proof. And if the facts and circumstances contained in the evidence offered by plaintiff, were sufficient for the jury to infer fraud in the sale under the attachment, they had a right to consider defendant's title fraudulent and void; for it is a settled principle that this defendant can claim no better title than the first purchaser under the attachment, from whom he derived his title. I think, therefore, the judge erred in refusing to receive the plaintiff's testimony in this view of the case.

That a judgment on record *legally* proved to be paid is void, and any sale under it inoperative to the purchaser or any subsequent purchasers, cannot well be denied. But a question has been raised by the counsel of the defendant, that a judgment on record cannot be proven to be paid by parol testimony, and the Chief Justice, in giving the opinion of the Supreme Court, sustains their objection.

In this case the evidence is conclusive as to the payment of the judgment, but the judge on the circuit, in accordance with the opinion of the Chief Justice, ruled that the evidence was not admissible, because it was parol testimony. I can see no validity in this objection or in the opinion of the Chief Justice. I know of no law that precludes parol proof of payment of a debt in a court of justice, where the proof of payment comes up as part of the case. Parol testimony is always legal and proper in a court of law, unless in some particular case where statute law forbids it, which is not the case here. Parol testimony is one of the peculiar prerogatives of a court of law, and the clear and prescribed rights of parties in such cases. In *Jackson* v. *Caldwell*, 1 *Cowan's Reports* 622, Woodworth, J., says: " It is certain that the

judgment is no lien after payment, which is matter *in pais*, and may be established *by parol testimony."* What is a judgment, which is held a thing so sacred that either for payment or fraud it cannot be inquired into by parol testimony? It is a settled adjudication of an existing debt. It is also a power by means of which a creditor may enforce his claims. by the sale of the debtor's property. The *record* is the evidence of the amount of debt and cost due. The *power* is the legal authority to sell. Both the record as evidence of debt, and the power to sell under it, are legally *dead* when payment is made. An existing debt is all the *life* a judgment ever had or can have. In this case the plaintiff has actual and positive proof that the judgment and cost was paid nearly a year before the sale by the auditors.

And when the defendant sought to claim title through the auditors' sale, it was competent for the plaintiff to produce parol testimony to prove that the judgment on which the auditors' sale was made was a *paid* judgment, and therefore void. But was the testimony offered entirely parol? It appears that after Stranahan had obtained judgment on his bond in the Passaic court, he took the same bond and entered up another judgment in the Common Pleas of New York city. By this means he transferred his whole cause of action to another state. The two judgments on record in Passaic and New York were obtained on the same bond, and in effect, if not in law, were the same judgment. And when satisfaction in a legal manner was entered on the New York judgment by a satisfaction piece, and an exemplified copy of the same presented, it ought not to have been decided as mere parol testimony. The satisfaction entered legally in New York was a legal satisfaction of both judgments. The Chief Justice, in his opinion, disposed of the case on the ground of " the sanctity of judgments," and also that public policy required courts to give protection to purchasers under a power in preference to all others. I have no idea of placing the sanctity of judgments above the sanctity of titles. Neither does public policy require that persons purchasing at their

own risk under a power, should be protected in preference to the original *bona fide* owners. *Caveat emptor* is a maxim of the law, and he who purchases at his own risk must take the risk. He must not expect courts to shield him from the consequences of his own voluntary act.

But it may be said that the plaintiff, in offering his testimony, did not charge fraud, and that the charge does not appear in the record. It was not necessary for him to charge fraud. He had a right to offer any legal evidence to rebut the defendant's claim of title, and apply it afterwards. Plaintiff offered his rebutting testimony to prove that Stranahan, the plaintiff in the judgment, had first received the full amount of his judgment, and then directed his property to be sold in his absence on this paid judgment. And if the evidence had been given to the jury, plaintiff might have successfully charged before the jury that *the sale* by Stranahan, the plaintiff in the judgment, for his own benefit, after the judgment was paid and *the purchase* by his attorney, was fraudulent and void.

The rule of law laid down by the Chief Justice not only protects *paid* judgments, but would also protect judgments *obtained by fraud and perjury.* Let me illustrate. Suppose a man living in New Jersey and owning land here. He pays his only creditor before witnesses, takes a receipt, and leaves for the west. In his absence his dishonest creditor, with his money in his pocket, procures an attachment for his paid claim, by an affidavit that the amount is still due and unpaid. The attachment is advertised in a county paper which the absent man never sees, and in the usual course of legal proceedings the defendant's property is sold, and the purchaser takes possession. When the defendant returns, indignant at the wrong done him, he prosecutes the plaintiff in attachment in a criminal court, gets him indicted for perjury, and sends him to the state prison. He also brings an action of ejectment for the recovery of his lands. But the witnesses which were permitted to prove the perjury, on which the judgment was obtained and the sale made, are rejected by the court below, on account of the "sanctity" of this fraudulent judg-

ment, which cannot be attacked in a collateral way! Thus the criminal court furnishes the criminal, and the court of justice protects his crime and punishes his victim by withholding restitution.

A rule of law which results in such gross injustice is certainly contrary to equity, and cannot be sound law; and I have not found a single decision but the one under review which favors it. It is said a contrary rule might injure the innocent purchaser. This may be true. But is the purchaser, in the case I have cited in the case before us, any more innocent than the original owner whose property has been fraudulently sold? And if two innocent men hold titles to the same property—the original owner by a *bona fide* sale, and the other by an auditor's sale under a fraudulent attachment—which innocent man should suffer? Surely not the original owner, who holds the oldest right. Most certainly the man who purchased at his own risk (innocently it may be) at a fraudulent sale. When a purchaser buys property at a private sale for his own use at a *bona fide* price, and when he does nothing to forfeit his title, he has the first claim upon courts of justice to protect him in his rights.

And when, as in this case, an attempt is made in his absence by the wrong doing of others to wrest his property from him and transfer it to others, the first duty of courts is to stand by the original owner. There should be a remedy for every wrong, and I believe there is. But to make the wrong perpetual by a rule of law, shutting out the evidence to prove the wrong, would be a species of judicial legislation contrary to every principle of right and justice. Our constitution declares that "no person shall be deprived of his property without *due process* of law." The only legal proceedings to dispossess a land owner is for debt, taxes, or by condemnation. If he is free from all these, then all proceedings, even if under the forms of law, are fictitious, and not *due process.* This doctrine appears to be settled in our courts. In *Wood* v. *Colvin*, 2 *Hill's R.* 566, Bronson, J., says: "When a judgment is satisfied, there is no longer any power to sell, and it is difficult to see how a title can be ac-

Nichols v. Dissler.

quired, even by a *bona fide* purchaser without notice of payment. The general rule is, that a purchaser under a power buys at his peril, and however innocent he may be, we have not been referred to any case which holds that he can acquire a title without showing a valid subsisting power."

In *Jackson* v. *Morse*, 18 *Johns.* 441, the judge says : " That plaintiff in that case was a *bona fide* purchaser under a tax sale by the comptroller, but on proof that the tax had been paid before the sale, it was held that the plaintiff acquired no title, and I am unable to distinguish that case in principle from one where there has been a sale under a satisfied judgment."

In *Craft* v. *Merill*, 14 *N. Y. R.* 456, Denio, C. J., says : " The authority to sell is the judgment, and when that is discharged the power ceases." In the same case, Johnson, J., says : " This depends upon the question whether the judgment on which the execution in the sheriff's hands was issued, was paid at the time of the sale by the sheriff. The purchaser under a power is chargeable with notice if the power does not exist, and purchases at his peril." In this decision the whole court concurred. And in our own state, in *Simmons* v. *Vandegrift*, 1 *Saxton's R.* 55, Chancellor Vroom says : " The first question that presents itself is, whether the judgment was satisfied. If it was, the sheriff had no authority to sell, and the deed could convey no interest to the purchaser." I can draw no distinction between the sale by a sheriff or auditors, or even the sale under an assessment for taxes. The power to sell in all three is an existing debt. If that is paid, the law is well settled that there is no authority in the officers to sell, and all sales where there is no existing debt are void, and convey no title to the purchaser.

The judgment in the court below should be reversed.

*For affirmance*—COMBS, CORNELISON, ELMER, FORT, GREEN, HAINES, WOOD.    7.

*For reversal*—KENNEDY, VAN DYKE.    2.

Judgment affirmed.

CITED in *Henderson* v. *Hayes*, 12 *Vroom* 389.